# Exhibit 12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID KARRIGAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DATAX, LTD., a Limited Liability Nevada Company; and SELLING SOURCE, LLC, a Delaware Limited Liability Company,<br><br>Defendant. | Case No.      5:13-cv-02995-SI<br><br>**DECLARATION OF JESSICA TILLMAN, OF DATAX, LTD., IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date: May 30, 2014<br>Time: 9:00 a.m.<br>The Honorable Susan Illston<br><br>Complaint Filed:  June 28, 2013 |

I, Jessica Tillman, declare as follows:

1.     I submit this declaration in support of the motion for summary judgment of defendants DataX, Ltd. ("DataX") and Selling Source, LLC ("Selling Source"). I have personal knowledge of the facts set forth herein and, if called upon to do so, could and would competently testify about them.

2.     I am currently Vice President of Product and Compliance at DataX and was previously Executive Vice President of Operations. I have been employed with DataX since December, 2011 and have served in my current capacity since February, 2014. As a result of my work, I am knowledgeable about DataX's policies and procedures with respect to the furnishing of consumer reports, including the credentialing of customers to whom DataX furnishes consumer reports; DataX's systems and records regarding consumer information; and the business relationship between DataX and Selling Source.

3.     In this declaration, I use the term "consumer report" to mean reports that DataX treats as meeting the definition of a "consumer report" under the Fair Credit Reporting Act ("FCRA").

4.     DataX is a limited liability company organized under the laws of the State of Nevada, and a wholly-owned subsidiary of Selling Source. It prepares "consumer reports" reflecting consumers' loan payment histories that it provides to customers with a permissible purpose to obtain a credit report, including lenders that make loans to consumers for such lenders' use in determining whether to extend credit to the consumer. DataX does not prepare from its databases any communications about consumers that it does not treat as "consumer reports." Because it is in the business of regularly preparing and selling "consumer reports," DataX considers itself to be a "consumer reporting agency" within the meaning of the FCRA.

5.     DataX does not sell "consumer reports" to the public at large. It sells its reports only to credentialed customers with whom it has executed contracts, as described below. At any given time, DataX has fewer than 100 customers to whom it is selling "consumer reports."

6.     Because the FCRA requires consumer reporting agencies to provide "consumer reports" only to those users it reasonably believes to have a permitted purpose for using such

Case 3:13-cv-02995-SI Document 25-2 Filed 04/18/14 Page 3 of 6

reports," and to verify the identity of new prospective users, DataX employs and performs a standardized credentialing policy and process to vet prospective customers. DataX's procedures include, but are not limited to, the following: Before establishing an account for a prospective purchaser of "consumer reports", DataX requires an explanation of the prospective customer's permissible purpose for using "consumer reports," collects a business license or articles of incorporation from the prospective customer, verifies that the phone number supplied by the applicant is associated with the prospective customer, screens for Patriot Act compliance (OFAC), and engages a third party vendor to conduct an onsite inspection of the prospective customer's place of business to accomplish two main objectives which are: (1) verifying that the company is a bona fide business and that the location, equipment, and general environment are in line with the type of business and stated permissible purpose on the client's application and (2) verifying that the offices and facilities are secure with regards to consumer data. This would include, but not be limited to, measures such as having a security guard on duty, locking filing cabinets, password protected computers, and ensuring that the general public or prospective client customers would not be able to access consumer reports.

7. If a prospective purchaser of "consumer reports" passes the credentialing process, it must execute a written contract with DataX governing such purchases before DataX will supply it with any "consumer reports." DataX's written contracts with its customers limit the purposes for which the customers may procure consumer reports, and contain a certification from the customer that the customer has an FCRA "permissible purpose" for obtaining each consumer report procured under the contract.

8. The FCRA also requires "consumer reporting agencies" to maintain records for each consumer on whom it has furnished a "consumer report" that identify the users to which such "consumer report" was provided ("inquiries"). DataX thus, in the regular course of its business, captures records of each "consumer report" delivery, and maintains retrievable records from which it can determine to which entities it furnished a report regarding any specific consumer. The system architecture of DataX's databases is such that it is impossible to generate a "consumer report" from the database without creating a record that such a report was generated

and to whom it was supplied. DataX relies on its records of "inquiries" when it prepares for consumers "full file disclosures," reports that consumers may periodically request from consumer reporting agencies.

9. I have reviewed DataX's business records of "inquiries" relating to plaintiff David Karrigan. Those business records indicate that DataX furnished consumer reports regarding Mr. Karrigan to the following entities, and on the following dates, in response to credit inquiries associated with applications for credit that Mr. Karrigan initiated:

    a. Lendgreen: January 22, 2014

    b. NorthStar Finance, LLC: November 8, 2013; July 31, 2013

    c. Flurish, Inc: July 31, 2013

    d. American Web Loan: January 27, 2012; December 22, 2011

    e. AALM: December 5, 2011

    f. Tiger Financial dba Speedy/Rapid Cash: June 22, 2011; December 29, 2010; December 28, 2010

    g. Eastside Lenders: December 28, 2010; September 16, 2010

    h. Payday One: September 9, 2010; June 26, 2010

    i. Encompass Services, LLC: May 12, 2009

    j. Thinkcash Inc.: September 5, 2007; August 8, 2007

10. Accordingly, DataX's regularly maintained business records show that between June 22, 2011 (when Mr. Karrigan apparently took out a loan from Speedy Cash) and January 19, 2012 (when I am informed that Mr. Karrigan alleges he received a phone call in which the caller referred to Mr. Karrigan's default on the Speedy Cash loan), DataX sold a consumer report about Mr. Karrigan to two entities: AALM and American Web Loan.

11. When DataX sold a report on Mr. Karrigan to AALM on December 5, 2011, DataX had reason to believe that AALM intended to use the report for a permissible purpose:

    a. DataX's due diligence on AALM, conducted November 19, 2009, indicated that AALM is a short term lender;

b. AALM represented in its agreement with DataX that it is a short term lender; would only use consumer reports for FCRA permissible purposes and the stated permissible purpose was to qualify applicants for short term loans— lending decisioning;

c. DataX conducted post-contract audits of AALM, including requiring a new agreement and credentialing update on January 12, 2012; and Office of Foreign Asset Control verifications on January 12, 2012, January 17, 2013, and January 30, 2014.

d. after procuring consumer report on Karrigan, AALM reported to DataX that it had denied the loan application of Karrigan.

12. When DataX sold a report on Karrigan to American Web Loan on December 22, 2011, DataX had reason to believe that American Web Loan intended to use the report for a permissible purpose:

a. DataX's due diligence on American Web Loan, conducted May 11, 2010, indicated that American Web Loan is a loan servicing company;

b. American Web Loan represented in its agreement with DataX that it is a loan servicing company; would only use consumer reports for FCRA permissible purposes and the stated permissible purpose was to verify information provided on loan applications; and

c. DataX requested and received an updated agreement on December 22, 2011.

13. Each of the other eight entities listed in paragraph 8 are also credentialed customers of DataX and had provided DataX with information regarding their permissible purposes for obtaining consumer reports, pursuant to the procedures described above.

14. DataX's regularly maintained business records show that DataX acquired the following information regarding David Karrigan from lenders who reported the credit performance on Mr. Karrigan's loans with those lenders:

a. Mr. Karrigan took out a $250.00 loan with Payday One, funded on June 28, 2010, and paid off on July 16, 2010;

b. Mr. Karrigan took out a second $250.00 loan with Payday One, funded on June 28, 2010, and paid off on July 16, 2010;

c. Mr. Karrigan took out a third $250.00 loan with Payday One, which he defaulted on as of October 5, 2010, and which was charged off on January 31, 2011; and

d. Mr. Karrigan took out a $250.00 loan with Tiger Financial dba Speedy/Rapid Cash on June 22, 2011, which he defaulted on as of July 14, 2011, and which was charged off as of July 14, 2011. This reported default was added to the DataX database on July 14, 2011, and would have been reported in consumer reports about Mr. Karrigan that DataX prepared after that date.

15. The database of information regarding consumers that DataX maintains, and the operation of that database, is segmented and inaccessible to agents of the Selling Source, LLC, with the exception of access provided to five individual Selling Source employees who provide information technology services to DataX.

16. DataX has strictly observed corporate formalities, including maintaining separate bank accounts from Selling Source, documenting all financial transactions, using corporate assets solely for corporate business purpose, and the timely payment of corporate taxes, payroll taxes, and licensing fees. Selling Source and DataX each maintain its own corporate books and records, and is financially independent. DataX develops and operates under its own financial plan and budget. DataX is adequately capitalized and is capable of responding to a judgment, if any, entered against it in litigation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11ᵗʰ day of April, 2014.

Jessica Tillman

sf-3404859

TILLMAN DECLARATION ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:13-CV-02995-SI

5